# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

GREG SMITH,

                    Plaintiff,

v.                                                    CIVIL ACTION NO.   2:15-cv-06816

COLLECTION TECHNOLOGIES, INC.

                    Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion to Remand and for Hearing [ECF No. 3], Motion to Amend the Complaint [ECF No. 7], and subsequent Motion for Hearing [ECF No. 21].   Also pending are Defendant Collection Technologies, Inc.'s Motion to Dismiss [ECF No. 4] and Motion to Strike or, in the alternative, Motion for Leave to File Surreply [ECF No. 10].   For the reasons that follow, the Court **DENIES** Plaintiff's Motion to Remand and accompanying Motion for Hearing [ECF No. 3], **DENIES** CTI's Motion to Dismiss [ECF No. 4], **GRANTS** Plaintiff's Motion to Amend the Complaint [ECF No. 7], and **DENIES AS MOOT** CTI's Motion to Strike or for Leave to File a Surreply [ECF No. 10] and Plaintiff's Motion for Hearing [ECF No. 21].

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Greg Smith brings this civil action in response to CTI Collection Technologies, Inc.'s ("CTI") garnishment of his wages for repayment of a student loan.   CTI, a debt collector, has purportedly garnished thousands of dollars of Plaintiff's income in an attempt to recover

payments for a defaulted loan that Plaintiff allegedly repays directly to the United States Department of Education ("DOE") through an income-based repayment plan.

Plaintiff filed suit against CTI in the Circuit Court of Kanawha County, West Virginia on April 22, 2015.  His four-count Complaint alleges violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), negligence, intentional infliction of emotional distress, and conversion.  CTI was served on April 27, 2015 and timely removed the action to this Court on May 27, 2015.  CTI asserts that this Court has subject matter jurisdiction under the federal officer removal statute codified at 28 U.S.C. § 1442(a)(1).  Plaintiff contests that statute's applicability and moves to remand.[1]  CTI has since filed a Rule 12(b)(6) motion to dismiss Plaintiff's Complaint on grounds that each of its state law claims is preempted by the Higher Education Act, 20 U.S.C. § 1070 *et seq.* ("HEA"), and its corresponding regulations.  Plaintiff moved for leave to amend his Complaint shortly after receipt of CTI's motion to dismiss.  His amended pleading adds factual detail to comply, he explains, to the more stringent pleading requirements of the federal courts.  The claims asserted in the First Amended Complaint are identical to those raised in the original pleading.  Seeing the motion is unopposed, the Court **GRANTS** the motion to amend [ECF No. 7] and relies on this amended pleading in its resolution of the parties' remaining motions.

---

[1]  Plaintiff's initial arguments raised in support of his motion to remand were quite cursory and, as explained below, premised on an inaccurate reading of applicable law.  By the time he filed his reply, however, Plaintiff seems to have been alerted to the deficiencies in his initial brief and submitted a much more thorough analysis in support of his position.  CTI perceives this as unfair and, as a result, moved to strike Plaintiff's reply or, in the alternative, for leave to file a surreply to address the arguments to which it did not have the opportunity to respond.  Because the Court ultimately resolves the motion to remand in CTI's favor without the necessity of further argument, the Court will **DENY AS MOOT** CTI's motion to strike or for leave to file a surreply.

## II.   DISCUSSION

### A.  Motion to Remand

The federal officer removal statute set forth in 28 U.S.C. § 1442(a) confers federal jurisdiction over a civil action directed at "any officer (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."   The words "acting under" are to be interpreted broadly, *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969), and the statute must be construed liberally. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007); *Willingham*, 395 U.S. at 406–07 ("The federal officer removal statute is not 'narrow' or 'limited.' . . . Congress has decided that federal officers . . . require the protection of a federal forum.   This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)."").   Thus, the general rule requiring strict construction of removal statutes, *see Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994), is inapplicable to cases removed under § 1442(a)(1).   *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006); *Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311, 316 (E.D.N.Y. 2014) (distinguishing between general removal statutes and federal officer removal).

To successfully remove a state lawsuit under this statute, a defendant must establish that "(1) it is a 'person' within the meaning of the statute, (2) it acted under the direction of a federal officer, (3) it has a colorable federal defense to the [plaintiff's] claims, and (4) there is a causal nexus . . . 'between the . . . claims and acts it performed under color of federal office.'"   *Carter v. Monsanto Co.*, 635 F. Supp. 2d 479, 488 (S.D. W. Va. 2009) (citing *Virden v. Altria Group, Inc.*, 304 F. Supp. 2d 832, 843 (N.D. W. Va. 2004)); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (citations omitted) (enunciating

3

a three-part test because the "acting under" requirement subsumes the existence of causation between the charged conduct and asserted governmental authority).   The parties do not dispute that CTI is a "person" within the meaning of the statute.   *See Isaacson v. Dow Chem. Co.*, 517 F. 3d 129, 135–36 (2d Cir. 2008) (finding corporations are "persons" under § 1442(a)); *Virden*, 304 F. Supp. 2d at 844 (same).

This removal statute deviates from the traditional application of the "well-pleaded" complaint" rule.   *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 ("Section 1442(a) is an exception to the 'well-pleaded' complaint' rule . . . .").   Under that rule, a case is typically removable on federal question grounds only if the plaintiff's complaint establishes that the case "arises under" federal law.   *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983).   Federal defenses are generally irrelevant.   *Id.* (citations omitted).   However, "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."   *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999).   The Court can thus summarily dispense with Plaintiff's first argument in opposition to removal; that is, that removal is not proper on the basis of CTI's federal defense.   The federal officer removal statute is an exception to the general rule on which Plaintiff relies; indeed, the existence of a colorable federal defense is the crux of the statute.   *See id.*   The Court addresses Plaintiff's remaining contentions starting with a discussion of the "acting under" and "causal nexus" prongs of the applicable standard.

 i.   *"Acting Under" and Causal Nexus Requirements*

A defendant "acts under" the control of a federal agency if the agency has "direct and detailed control" over the activity.   *Carter*, 635 F. Supp. 2d at 488 (citing *Pack v. AC and S, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993)); *State v. Ivory*, 906 F.2d 999, 1001 (4th Cir. 1990).   The

4

defendant's "'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)) (emphasis in original). A "special relationship" must exist between the two. *Id.* at 156. CTI's Notice of Removal states that under a Task Order contract with the DOE, it is contractually obligated to support collection and administrative resolution activities on debts held by that agency. (Not. of Removal at 4, ECF No. 1.) CTI claims that it "acts under" the DOE by virtue of the authority delegated under this contract. Plaintiff, on the other hand, endorses a more limited view of the "acting under" requirement that he claims was endorsed by the United States Supreme Court's opinion in *Watson*.

The United States Supreme Court has recognized that the "acting under" language in 1442(a) is "broad" but not "limitless." *Watson*, 551 U.S. at 147. In *Watson*, the Supreme Court considered whether the Philip Morris Companies ("Philip Morris") were "acting under" a federal officer when they tested and regulated tobacco cigarettes in accordance with detailed regulations promulgated by the Federal Trade Commission. *Id.* at 142. The Court held that "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.* at 152 (emphasis in original). Thus, a regulated corporation does not "act under" a federal officer merely because its activities are closely monitored and subject to highly detailed and technical regulations.[2]

---

[2] The purposes underlying § 1442(a)'s enactment animated the Supreme Court's decision. The Court emphasized that the central purpose of § 1442(a) is to overcome the threat that state court prejudice poses to federal activity. *Watson*, 551 U.S. at 150. It further reasoned that a highly regulated company's compliance with federal law "does not ordinarily create a significant risk of state court prejudice . . . [n]or is a state court lawsuit brought against such a company likely to disable federal officials from taking necessary action designed to enforce federal law." *Id.* at 152 (citations omitted).

The *Watson* Court did not pass on the question of whether § 1442(a)'s removal provision had potential application to a private entity contracting with the Government. *Id.* at 156. However, it took care to distinguish cases where the government's close supervision of a private contractor was deemed sufficient to meet the "acting under" statutory requirement. *Id.* at 154 ("[W]e need not further examine here (a case where private contracting is not at issue) whether and when particular circumstances may enable private contractors to invoke the statute."). The analysis employed by the Court to find that Philip Morris was not a federal actor, however, suggests the opposite conclusion may be appropriate when applied to a private entity contracting with the Government. *Id.* at 153, 154 (noting that a private contractor "assists" or "helps carry out" the federal officer's duties by "produc[ing] an item that it needs" or performing tasks that, "in the absence of a contract with a private firm, the Government itself would have had to perform.").

Plaintiff reads *Watson* to foreclose removal under § 1442(a) by any individual or entity other than those employed by the federal government. Because *Watson* pointedly distinguished cases where a contractual relationship exists between a private firm and the government, however, Plaintiff's interpretation is unjustifiably narrow. Post-*Watson*, lower courts are still held to the obligation to read "acting under" broadly where such a construction is consistent with the purposes of the statute. *See id.* at 151 (citing *City of Greenwood v. Peacock*, 384 U.S. 808, 824 (1966)) (confirming that the statute authorizes removal by private parties "if they were 'authorized to act with or for federal officers or agents in affirmatively executing duties under federal law"). Unlike Philip Morris, CTI has sought removal under § 1442(a) not based on its asserted compliance with technical federal regulations, but because it received delegated authority from the DOE to carry out collection activities on the agency's behalf. Through that contract, CTI "assist[ed]" and "help[ed] carry out" the duties of its federal superior. *Id.* at 152 (citation omitted); *see Isaacson*,

6

517 F.3d at 137.   The Court has little hesitation finding that CTI "acted under" the direction of a federal officer in light of the special relationship that existed between CTI and the DOE.

The next issue is whether, under the causal nexus requirement, the acts for which CTI has been sued were dictated by the federal government, in this case, the DOE.   *Isaacson*, 517 F. 3d at 137-38; *Carter*, 635 F. Supp. 2d at 489; *see Willingham v. Morgan*, 395 U.S. 402, 409 (1969) (finding it sufficient for causation purposes to show that the defendant's acts taken in performance of an official duty constitute the basis of the state prosecution).   The hurdle established by this requirement is "quite low." *Isaacson*, 517 F.3d at 137.   In the case of a non-governmental corporate defendant, the corporation "must demonstrate that the acts for which [it is] being sued . . . occurred *because of* what [it was] asked to do by the Government." *Id.*

CTI has provided evidence that pursuant to its contract with the DOE, it was obligated by federal regulations attendant to the HEA to garnish Plaintiff's wages in an attempt to collect on his defaulted loan.   Plaintiff does not contest the legitimacy of CTI's contract with the DOE or CTI's regulatory obligations under that contract, at least in appropriate circumstances, to garnish the wages of borrowers whose federal student loans have fallen into default.   Rather, Plaintiff's case hinges on his allegation that while the garnishment of his wages may have been initially lawful under DOE's directive, CTI acted outside the scope of that directive by continuing to garnish Plaintiff's wages despite his request for a loan rehabilitation.   Whether or to what extent CTI departed from DOE's guidance by refusing to acknowledge Plaintiff's rehabilitation request is a question for discovery.   At this point, however, it appears to the Court that CTI easily clears the causation hurdle.   At least for purposes of resolving the jurisdictional question, CTI garnished Plaintiff's wages as alleged in the Complaint because of what it was asked to do by the

Government.   The Court finds that CTI has satisfied the "acting under" and causation requirements of the statute.

### ii.   Colorable Federal Defense

Proper removal under the federal officer removal statute also requires the assertion of a "colorable" federal defense.   *Mesa v. California*, 489 U.S. 121 at 128–29, 136 (1989) (noting that it is the raising of a federal defense in the § 1442(a) removal petition that constitutes the federal law under which the action arises for purposes of Article III).   Proof of success on the merits of the defense is not required.   *Jamison v. Wiley*, 14 F.3d 222, 238 (4th Cir. 1994) (quoting *Mesa*, 489 U.S. at 133) ("The CTI need not prove that he will actually prevail on his federal immunity defense in order to obtain removal; indeed, 'one of the most important reasons for removal is to have the validity of the federal defense of official immunity tried in a federal court.'"); *see Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010) (similarly finding that to satisfy the jurisdictional question, it is sufficient if the defense is plausible).   CTI raises two federal defenses to Plaintiff's claims: the government contractor defense and preemption under the HEA and corresponding DOE regulations.   Plaintiff contends that neither defense provides a basis for removal.

As to the government contractor defense, Plaintiff asserts that the defense can be invoked only by military contractors when sued over some failure in a product made for use in the military. This common law defense was articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).   *Boyle* held that the "uniquely federal interests" implicated by government contracts with third parties permitted tort claims arising from federal procurement contracts to be litigated in federal court.   *Id.* at 505–06.   Under the test handed down in that case,

8

> [l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* at 512.   This test would appear to support Plaintiff's argument and exclude non-military contractors from utilization of the defense.   The lower courts to subsequently interpret *Boyle*, however, have not adopted such a narrow view.   To be sure, the Fourth Circuit has not addressed the issue of whether the government contractor defense is available based upon a non-military performance contract like CTI's.   The Court nonetheless recognizes that at this juncture it must test CTI's alleged defenses only for plausibility.   Because the defense has found considerable support in the non-military context outside and, to a limited extent, within this circuit, the lack of guidance from the Fourth Circuit itself does not defeat the plausibility of CTI's claimed defense.[3]

Indeed, "where a federal defense . . . has previously found success in other circuits, one would be hard pressed to say that the defense was not colorable."   *Bennett*, 607 F.3d at 1091 (quoting *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 391 (6th Cir. 2007)) (private firm hired by the FAA to treat an airport's air traffic control tower for mold plausibly asserted government contractor defense); *see Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224, 1235 (8th Cir. 2012) (Federal Employees Health Benefits Act program carriers could plausibly assert the government contractor defense because they contracted with the federal government to provide health care insurance for federal employees); *Hudgens v. Bell Helicopters*,

---

[3] The Court has located only one case within the Fourth Circuit where the government contractor defense was raised by a non-military contractor in support of § 1442(a) removal.   In a factually similar case from this district, the Honorable Irene C. Berger found that a federal student loan servicer raised a colorable federal defense to the plaintiff's WVCCPA and state tort claims by claiming that the government contractor defense immunized it from liability.   *Snuffer v. Great Lakes Educ. Loan Servs., Inc.*, 5:14-cv-25899, ECF No. 16 (S.D. W. Va. May 19, 2015) (unreported disposition).

328 F.3d 1329, 1334 (11th Cir. 2003) (applying defense to a service contract because subjecting a contractor to state tort liability would create a conflict with uniquely federal interests); *Carley v. Wheeled Coach*, 991 F.2d 1117, 1123 (3d Cir. 1993) (finding that the government contractor defense is available to non-military government contractors).   For that reason, the Court finds the government contractor defense has potential application outside the military procurement contract context.   No more is required to justify removal.

The Court further concludes that even if the Fourth Circuit found the government contractor defense inapplicable to non-military contractors, CTI's alternative preemption defense constitutes an independent "colorable" defense supporting removal.   *See In re Methyl Tertiary Butyl Ether Products ("MTBE") Liability Litigation*, 364 F. Supp. 2d 329, 332–37 (S.D.N.Y. 2004) (preemption is a colorable federal defense under § 1442(a)).   CTI claims that to the extent West Virginia law prohibited it from garnishing Plaintiff's wages, the law conflicts with and is preempted by the HEA.   "Under ordinary conflict preemption, state laws that conflict with federal laws are preempted, and preemption is asserted as a federal defense to the plaintiff's suit." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186–87 (4th Cir. 2002).   The HEA provides for the garnishment of a borrower's disposable pay if the borrower is not making required payments under a repayment agreement with the DOE.   *See* 34 C.F.R. § 682.410(b)(6)(vi). Because Plaintiff's claims arise from the contention that CTI was not authorized, at least after it ignored his request for loan rehabilitation, to garnish his wages, CTI's reliance on the HEA proves the potential for conflict between these two provisions.   Plaintiff responds to CTI's assertion of this defense by repeating his same incorrect belief that *Watson* bars private governmental contractors from removal under § 1442(a).   (*See* Section II.A.i, *supra*.)   Without ruling on the defense's merits, the Court will find that preemption is a colorable defense to Plaintiff's claims.

10

CTI has satisfied the requisite elements of the federal officer removal statute, and the Court therefore **FINDS** that it has subject matter jurisdiction over Plaintiff's claims.

### B.  Motion to Dismiss

CTI moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). CTI's motion was filed days before Plaintiff moved to amend his Complaint.  CTI does not oppose the motion to amend, and, while the arguments in its motion and its subsequent briefing continue to refer to the original Complaint, CTI acknowledges that Plaintiff's proposed amendments do not alter or affect in any way its underlying arguments in support of dismissal. The Court therefore views CTI's motion as a challenge to the sufficiency of the First Amended Complaint.

CTI asserts that because each of Plaintiff's claims arises from the alleged illegality of his wage garnishment, they are each preempted by the HEA.  Alternatively, in the event that HEA preemption is found to be inapplicable, CTI asserts that Plaintiff's WVCCPA and conversion claims fail to state a claim upon which relief can be granted.

### i.  Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Allegations "must be simple, concise, and direct" and "[n]o technical form is required."  Fed. R. Civ. P. 8(d)(1).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a civil complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* 1356 (1990)).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

    *ii.*    *HEA Preemption*

    To fulfill the HEA's goal of "keep[ing] the college door open to all students of ability, regardless of socioeconomic background," *Chae v. SLM Corp.*, 593 F.3d 936, 938 (9th Cir. 2010), Congress created the Federal Family Education Loan Program ("FFELP"), a financial aid program with a built-in system of loan guarantees for private lenders willing to lend money to students and their families. *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 589 (4th Cir. 2005). Under FFELP regulations, lenders unable to recover on a defaulted loan may recoup their losses from certain "guaranty agencies" with contracts with the Secretary of the Department of Education. *Chae*, 593 F.3d at 939. As part of a guaranty agency's contract with the DOE, the DOE acts as a secondary insurer on the loans guaranteed by that agency. *Id.*; 20 U.S.C. § 1078(c); 34 C.F.R. § 682.404(a) (providing for reimbursement to the guaranty agency for unrecoverable losses on loans assigned per the parties' contract). As part of its collection efforts on defaulted loans, HEA regulations require the guaranty agency to "initiate administrative wage garnishment proceedings

12

against all eligible borrowers."   34 C.F.R. § 682.410(b)(6)(vi).   Not only does the HEA not grant individuals a private right of action to enforce violations of its statutory scheme, 20 U.S.C. § 1082(a), but it also contains a number of preemption provisions that present a potential bar to both Plaintiff's WVCCPA and common law claims.   *See* 20 U.S.C. § 1095a; 34 C.F.R. § 682.410(b)(8).

The source of CTI's preemption argument is the Supremacy Clause of the Constitution, which makes federal law "the supreme Law of the Land."   U.S. Const. art. VI, cl. 2.   Stemming from the Supremacy Clause is the well-established principle that "federal statutes and regulations properly enacted and promulgated 'can nullify conflicting state or local actions.'"   *College Loan Corp.*, 396 F.3d at 595 (quoting *Nat'l Home Equity Mortgage Ass'n v. Face*, 239 F.3d 633, 637 (4th Cir. 2001)).   Preemption applies in three circumstances: "(1) when Congress has clearly expressed an intention to do so ('express preemption'); (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ('field preemption'); and (3) when a state law conflicts with federal law ('conflict preemption')."   *Id.* at 595–96.

CTI advances an express preemption and an alternative conflict preemption argument. The Court must first consider whether the "[n]otwithstanding any provision of State law" clause of the HEA's wage garnishment provision expressly preempts the WVCCPA and West Virginia common law claims asserted in this case.   The applicable provision provides:   "[n]otwithstanding any provision of State law, a guaranty agency . . . may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment . . . ."   20 U.S.C. § 1095a.   "The HEA is riddled with isolated preemptive provisions that expressly preempt certain provisions of state law," *Cliff v. Payco General Am. Credits, Inc.*, 363 F.3d 1113, 1124–25 (11th Cir. 2004) (citations omitted), and this is one of them.   Even in

13

light of a statutory provision that expressly preempts State law, however, the Court must determine the scope of the statute's reach. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992) (reasoning that because Congress' enactment of a preemptive provision implies that matters beyond the reach of a statute are not preempted, courts must "identify the domain expressly preempted" by the applicable provision). The Court starts with the assumption that "the historic . . . powers of the States were not to be superseded by Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)); *Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996) ("Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction.") (citation and internal quotation marks omitted)). Consumer protection is an area traditionally reserved by the States. *Taltech Systems, Inc. v. Bryant*, 702 F.3d 232, 236 (5th Cir. 2012) (finding a presumption in favor of no preemption where state consumer protection laws were at issue); *Aguayo v. U.S. Bank.*, 653 F.3d 912, 917 (9th Cir. 2011) (same); (*Gen. Motors Corp v. Abrams*, 897 F.2d 34, 41–42 (2d Cir. 1990) (requiring compelling evidence to justify preemption of state consumer protection laws). A presumption against preemption therefore applies. Incidentally, that presumption is even stronger against preemption of state remedies where, as here, no federal private right of action exists. *College Loan Corp.*, 396 F. 3d at 597 (citing *Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1112 (4th Cir. 1988)).

In evaluating the scope of express preemption in the HEA's wage garnishment provision, the Eleventh Circuit held that the "'[n]otwithstanding any provision of State law' clause preempts only those provisions of state law that would otherwise prohibit or hinder the ability of a guaranty agency to garnish a debtor's wages." *Cliff*, 363 F.3d 1113, 1125 (11th Cir. 2004) (noting that

Congress' intent in including the preemptive clause in § 1095a was likely limited to preempting the limitations state law often places on pre-judgment garnishment); *see McComas v. Financial Collection Agencies, Inc.*, 1997 WL 118417, at *2 (S. D. W. Va. Mar. 7, 1997) ("The HEA does not expressly preempt West Virginia law relating to debt collection.").   The cases cited by CTI actually prove the point that § 1095a was intended to expressly preempt state statutes that regulate wage garnishment, not state consumer protection laws.  *See Savage v. Scales*, 310 F. Supp. 2d 122, 134 (D.D.C. 2004) (finding that collection agency did not have to comply with District of Columbia law regarding pre-garnishment requirements where wages were garnished pursuant to § 1095a); *Nelson v. Diversified Collection Servs. Inc.*, 961 F. Supp. 863, 872 (D. Md. 1997) (statute expressly preempted Maryland's wage garnishment laws).   Plaintiff's claims arising under the WVCCPA and common law do not regulate wage garnishment, and thus they are not expressly preempted by the preemptive clause of § 1095a.

In the absence of express preemption, the issue becomes whether conflict preemption presents a bar to Plaintiff's claims.[4]   The Court must consider whether it is possible for a guaranty agency to comply with the HEA and the WVCCPA at the same time.   The regulations implementing the HEA require a guaranty agency to "engage in reasonable and documented collection activities" on defaulted loans.   34 C.F.R. § 682.410(b)(6)(i). Among those mandatory collection activities is the initiation of administrative wage garnishment proceedings against eligible borrowers.   *Id.* § 682.410(b)(6)(vi).   With respect to these collection activities, the regulations further provide for the preemption of "any State law, including State statutes,

---

[4] The parties are in tacit agreement that the doctrine of field preemption is inapplicable to this case, and the Court concurs.  *See McComas*, 1997 WL 118417 at *2, *2 n. 4 ("The Court also has little difficulty concluding the HEA lacks the comprehensive scope necessary for field preemption . . . Congress simply did not intend to occupy the entire field of pre-litigation debt collection activities.").

regulations, or rules, that would conflict with or hinder satisfaction of the requirements of these provisions." *Id.* § 682.410(b)(8).

Several courts hold that the HEA preempts *any* state causes of action relating to pre-litigation collection efforts of federal student loans. *See Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996); *Seals v. Nat'l Student Loan Program*, No. 5:02-cv-101, 2004 WL 3314948, *5 (N.D. W. Va. Aug. 16, 2004) (viewing the WVCCPA's prohibition on fraudulent, deceptive, or misleading representations as a "burden" on pre-litigation activities authorized by the HEA).   However, this Court has held in three distinct cases that the HEA preempts only those state debt collection activities that specifically conflict with the federal scheme.   Each addressed the scope of HEA preemption in cases alleging violations of the WVCCPA.   *See Snuffer v. Great Lakes Educ. Loan Servs.*, 97 F. Supp. 3d 827, 832 (S.D. W. Va. 2015); *Martin v. Sallie Mae, Inc.*, 2007 WL 4305607 (S.D. W. Va. Dec. 7, 2007) ("[O]nly causes of action based on conduct that is permitted by the federal regulations, but prohibited by state law, would be preempted [by the HEA]."); *McComas*, 1997 WL 118417 at *2-3.   CTI has articulated no factual basis on which to distinguish these opinions, but predictably argues that the Court should follow *Seals* and its predecessors by endorsing a more expansive view of HEA preemption.   The Court will adopt the reasoning of its prior cases because they constitute in-district precedent and the Court finds no reason to depart from them.

In *McComas*, this Court reasoned that given the applicable regulations, agency interpretation of those regulations, and the congressional intent in enacting the HEA, a plaintiff's causes of action under the WVCCPA were not facially inconsistent with federal regulations because the lender could have complied with both.   *Id.* at *3–4.   Just last year, this Court distinguished *Seals* and held that "[t]hough portions of the WVCCPA conflict with DOE

regulations and are preempted, provisions barring threatening or fraudulent debt collection practices cannot be said to place a 'burden' on pre-litigation debt collection activities or to conflict with the objectives of the HEA." *Snuffer*, 97 F. Supp. 3d at 832.   In line with these decisions, this Court again concludes that HEA preempts the WVCCPA "only where conflicting statutory language, regulations, or HEA objectives exist."[5]   *Id.*

Assuming the truth of Plaintiff's factual allegations, the Court cannot conclude that the WVCCPA presents a conflict with the pre-litigation collection efforts mandated by the HEA.   CTI reads Plaintiff's claims as a general challenge to its right to garnish wages on the DOE's behalf. Plaintiff's actual allegations are much more nuanced.   Plaintiff admits that his student loan was in default and does not take issue with the initial garnishment of his wages.   Rather, he claims that CTI was obligated, upon his request, to assist him in securing a loan rehabilitation agreement. When CTI deliberately refused to do so, he alleges, it was no longer authorized to garnish his wages.   A more accurate synopsis of Plaintiff's claims, therefore, is not that he challenges the validity of wage garnishment under the HEA, but that he challenges wage garnishment that is conducted in a fraudulent, deceptive, and misleading manner calculated to enrich the collection agency at the borrower's expense.   Indeed, if Plaintiff's allegations are accepted as true, CTI's collection efforts ran afoul of the HEA itself, let alone the WVCCPA.

This is so because the HEA offers rehabilitation as a method designed to lift borrowers out of default status.   The HEA expressly requires guarantee agencies to establish a loan rehabilitation program for eligible borrowers.   34 C.F.R. § 682.405(a)(1).   If a borrower requests rehabilitation,

---

[5] *Snuffer*, *Martin*, *McComas*, and now this decision are in line with Fourth Circuit precedent which holds that, as to the HEA, "[t]he existence of comprehensive federal regulations that fail to occupy the regulatory field do not, by their mere existence, preempt non-conflicting state law."   *College Loan Corp.*, 396 F.3d at 598.

17

as Plaintiff alleges he did, the HEA imposes an affirmative obligation on the guaranty agency to "calculate a reasonable and affordable payment amount." *Id.* at § 682.405(b)(1)(iii).   This amount is to be calculated based on the borrower's Adjusted Gross Income ("AGI") and family size, which the guaranty agency must confirm by requesting supporting documentation from the borrower.[6] *Id.* at § 682.405(b)(1)(iv).   Within fifteen days of calculating the borrower's monthly payment, federal regulations require the guaranty agency to provide the borrower with a written loan rehabilitation agreement.   *Id.* at § 682.405(b)(1)(vi).   Furthermore, while the regulations require that "[a] guaranty agency must initiate administrative wage garnishment proceedings against all eligible borrowers," *Id.* at § 682.410(b)(6)(vi), the guaranty agency can continue garnishment only until the borrower makes five qualifying payments under the rehabilitation plan, at which time the garnishment must cease. *Id.* at § 682.405(a)(3)(i)–(ii).   The regulations go on to address in further detail the process by which a defaulted loan becomes rehabilitated, but these examples suffice to prove the point: far from being impossible, as CTI claims, to comply with the obligations imposed by federal regulations and the WVCCPA, the two sources of law would seem to be in harmony. Plaintiff does not attempt to require more of CTI than was already required by the HEA and its regulations.   By ignoring, as Plaintiff alleges, his request for loan rehabilitation, CTI flouted HEA regulations and in doing so engaged in deceptive trade practices and other unfair conduct prohibited by the WVCCPA.    Based on the foregoing, Plaintiff has pled state law claims that are complementary to, not in conflict with, HEA regulations.[7]   CTI's motion to dismiss based on complete preemption is **DENIED**.

---

[6] Plaintiff claims that it was after he provided his income information that CTI cut off all contact with him regarding his loan rehabilitation request.   (First Am. Compl. at ¶¶ 7, 10; ECF 7-1 at 1–2.)

[7] CTI asserts that Plaintiff's common law claims similarly "conflict with or hinder" its wage garnishment obligations.   For the same reasons that the WVCCPA claim is not preempted, the Court finds that

iii.    *Sufficiency of the Pleadings*

CTI contends that in the event Plaintiff's claims survive its preemption challenge, Plaintiff fails to state a claim under the WVCCPA because he has not alleged conduct that would constitute "[u]nfair methods of competition and unfair or deceptive acts or practices" under W. Va. Code § 46A-6-104.   Several examples of conduct that would meet the definition of "[u]nfair methods of competition and unfair or deceptive acts or practices" are set forth in § 102.   CTI claims that none of the facts alleged by Plaintiff reasonably fit with any of the examples of prohibited conduct, and thus Plaintiff's WVCCPA claim should be dismissed.

CTI's argument is unconvincing.   First of all, the statute makes clear that the statutory list providing examples of conduct prohibited by § 104 is not exhaustive.   W. Va. Code § 46A-6-102 ("'Unfair methods of competition and unfair or deceptive acts or practices' means and includes, but is not limited to, any one or more of the following [items][.]").   It remains to be seen whether Plaintiff can garner facts sufficient to prove a violation of § 104.   At this point in the case, the Court finds that Plaintiff has sufficiently stated a claim under § 104 by alleging that CTI engaged in subversive tactics designed to undermine his request for loan rehabilitation in order to continue profiting from its collection activities.   *See* W. Va. Code § 46A-6-102(7)(L) (including conduct that "creates a likelihood of confusion or of misunderstanding" in the definition of unfair or deceptive business practices).

CTI also avers that Plaintiff has failed to state a claim for conversion, apparently because the DOE authorized the garnishment of Plaintiff's wages.   In so moving, CTI relies on and attaches as an exhibit its Task Order contract with the DOE.[8]   (Def. Mot. to Dismiss Ex. 1, ECF

---

Plaintiff's common law claims do not conflict with CTI's collection activities under the HEA.

[8] The Task Order contract is a document referenced in Plaintiff's First Amended Complaint, (ECF No. 7-1

No. 4-1.)   West Virginia law defines conversion as "[a]ny distinct act of dominion wrongfully exerted over the property of another," in denial of or inconsistent with the property owner's rights. *Rodgers v. Rodgers*, 399 S.E.2d 664, 667 (W. Va. 1990).   In this case, CTI asserted an act of dominion over Plaintiff's property by administratively garnishing his wages.   Whether that act was "wrongful" will ultimately depend on whether CTI deliberately ignored Plaintiff's request for loan rehabilitation in violation of the HEA regulations described above.   Based on the regulatory mandate on the part of CTI to establish a rehabilitation program, *see* 34 C.F.R. § 682.405(a), and to extend loan rehabilitation agreements to eligible borrowers upon request, *Id.* at § 682.405(b), it is certainly plausible that CTI acted outside the scope of authority delegated by the DOE by taking no action on Plaintiff's rehabilitation request in an attempt to preserve its profits by continuing possibly unnecessary garnishment.   The Court thus **DENIES** the motion to dismiss Plaintiff's common law conversion claim.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Amend the Complaint [ECF No. 7], and **ORDERS** that the First Amended Complaint, [ECF No. 7-1], is now the operative pleading in this matter.   The Court further **DENIES** Plaintiff's Motion to Remand and accompanying Motion for Hearing [ECF No 3], **DENIES** CTI's Motion to Dismiss [ECF No. 4], and **DENIES AS MOOT** CTI's Motion to Strike [ECF No. 10] and Plaintiff's Motion for Hearing [ECF No. 21] .

---

at 2), and the Court may consider it in evaluating the legal sufficiency of Plaintiff's claims.   *See Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 22, 2016

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE